# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Nevelle Joshua Eberhart, Appellant.

Appellate Case No. 2023-000234

———————

Appeal From Richland County
DeAndrea G. Benjamin, Circuit Court Judge

———————

Opinion No. 6150
Heard April 8, 2026 – Filed July 1, 2026

———————

## AFFIRMED

———————

Appellate Defender Gary Howard Johnson, II, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Assistant
Attorney General Joshua A. Edwards, Assistant Attorney
General Paul Sanders Linker, Jr. and Solicitor Byron E.
Gipson, all of Columbia, for Respondent.

———————

**THOMAS, J.:** Nevelle Joshua Eberhart appeals his convictions of armed robbery
and possession of a weapon during a violent crime, arguing the trial court erred in
admitting (1) GPS data from his bond company obtained without a warrant, and (2)
a video recording.  We affirm, finding no error in the admission of the video and
finding that although the court erred in admitting the GPS data, the error was
harmless.

**FACTS**

This case involves the robbery of James Stewart (Victim) at an ATM at Palmetto Citizens Bank located near the intersection of King and Devine Streets in Columbia. As Victim was finalizing his transaction, a black moped pulled up and the rider pointed a finger toward Victim's ATM card and a gun toward Victim. After giving the perpetrator a false password, Victim ran to the Scotchman gas station directly across the street. When Victim left the Scotchman, he again saw the perpetrator, "took off," and called the police. Victim identified Eberhart at trial as the perpetrator.

Prior to trial, Eberhart moved to exclude GPS evidence obtained from the ankle monitor he was wearing as a requirement imposed by his bond company. Although the agreement between Eberhart and the bond company was not provided in the record on appeal, the court found the following:

> [H]ere I have not heard anything or did not find that the Defendant has a legitimate expectation of privacy when he voluntarily submits to GPS monitoring. The sole purpose of GPS monitoring is to determine a Defendant's location while out on bond. The Defendant entered into the agreement with the bond[] company, knowing that the bond[] company could share the information with law enforcement. One of the conditions of bond is good behavior, and to be able to -- the purpose of the GPS is to be able to locate the Defendant, that it could be shared with law enforcement, and it could be shared with the Court. And so, therefore, I do not find that the -- the Defendant had a legitimate or reasonable expectation of privacy as it relates to a GPS monitor that he has voluntarily entered into a contract with the bond[] company. And so, therefore, I am going to deny [the] motion to suppress the GPS monitoring location data.

Titus Curry, the office manager of BadBoyz Bail Bonding, testified that he worked for a company that "did location finding with different defendants." He explained how he used a third-party database, VeriTracks, that tracked location by "collect[ing] pings [from cell phone towers] and different locations on people depending on where they're going, . . . zones, things of that nature." As to

Eberhart, he explained the VeriTracks report for the times requested by law enforcement indicated Eberhart was at or near the location during the time of the robbery on January 1, 2022.

Officer Javonte Selph, of the Columbia Police Department (CPD), testified that he responded to a report of a robbery on the day in question. He met Victim at his house, where Victim reported he had been robbed at gunpoint at the ATM machine. Selph was wearing a body camera at the time. Eberhart objected to admission of a video of Victim's interview, and outside of the presence of the jury, the video was admitted with the caveat that it would be introduced after Victim testified. Selph testified the ATM machine was located at 2530 Devine Street. Selph was recalled after Victim testified, and the video recording was published to the jury over Eberhart's objection.

Jacqueline Richburg, of Columbia Richland 911 Communications, testified that a 911 call was received on January 2, 2022, the day following the ATM robbery, from Nicole Goodwin, who reported a stolen moped.

Investigator Emmett Gilliam of the CPD testified he investigated the robbery by first retrieving video from the bank, which showed the perpetrator arriving at the ATM on the moped while Victim was at the teller machine. In addition, the video showed the perpetrator pulling out a gun and appearing to grab Victim's ATM card from him and then Victim running away. The video also showed the moped's tag number. Gilliam investigated the tag number, which was registered to Goodwin at 2205 Stark Street, which was near the same area of Columbia. Gilliam went to Goodwin's address on January 7 and met Goodwin. The moped was at the home. While speaking to Goodwin outside, Eberhart came out of the house. Gilliam photographed Eberhart's identification card.

Without obtaining a warrant, Gilliam approached BadBoyz to obtain GPS data on Eberhart. Based on the GPS report, Gilliam opined Eberhart was on the 2400 block of Devine Street at the time of the robbery. After Victim could not identify Eberhart from a photo lineup, Gilliam compared the bank video to Eberhart and concluded it was "the same person." Gilliam then interviewed and arrested Eberhart. Victim's debit card was found during a search of Eberhart.

Eberhart moved for a directed verdict and a new trial, which were denied. The court sentenced Eberhart to fifteen years' imprisonment for armed robbery and a concurrent term of imprisonment of five years for possession of a weapon during the commission of a violent crime. This appeal followed.

**STANDARD OF REVIEW**

"In criminal cases, the appellate court sits to review errors of law only. This court is bound by the trial court's factual findings unless they are clearly erroneous." *State v. Parker*, 381 S.C. 68, 74, 671 S.E.2d 619, 621 (Ct. App. 2008) (internal citations omitted).

**LAW/ANALYSIS**

**A.      ADMISSIBILITY OF GPS DATA**

Eberhart argues the trial court erred in admitting the GPS location data because it was obtained without a warrant in violation of his Fourth Amendment rights under the United States Constitution. Eberhart also argues the trial court erred in admitting the evidence because he had a reasonable expectation of privacy under the greater protection afforded under the South Carolina Constitution.

We begin our analysis mindful of our supreme court's language in *State v. Moore*, 429 S.C. 465, 477, 839 S.E.2d 882, 888 (2020): "Of course, we recognize the adage 'get a warrant' will always be at play in these Fourth Amendment challenges. We join that chorus as well, as it is always preferable to 'get a warrant.'" Further, we note that "appellate review of a motion to suppress based on the Fourth Amendment involves a two-step analysis. This dual inquiry means we review the trial court's factual findings for any evidentiary support, but the ultimate legal conclusion . . . is a question of law subject to de novo review." *State v. Frasier*, 437 S.C. 625, 633–34, 879 S.E.2d 762, 766 (2022).

We also note that our analysis in this case would be different if this case concerned court-ordered monitoring or if the agreement was included in the record and indicated BadBoyz could or would share information with law enforcement. Eberhart argues he consented to giving the GPS data only to the bond company. The State argues Eberhart could not have held any legitimate expectation of privacy in data he knew was being collected and stored by a bond company *on behalf of the State*. However, as previously noted, the bond agreement was not in the record on appeal; thus, this court is unable to determine whether the agreement was "on behalf of the state" or merely an agreement between Eberhart and BadBoyz. Under the particular circumstances before us, we find Eberhart had a reasonable expectation of privacy in his GPS data and the trial court erred in

admitting the data because it was obtained without a warrant in violation of Eberhart's Fourth Amendment rights.

"The Fourth Amendment . . . protects the people's right to be free from unreasonable searches and seizures." *State v. Robinson*, 410 S.C. 519, 526, 765 S.E.2d 564, 568 (2014) (citing U.S. Const. amend. IV; S.C. Const. art. I, § 10). "'The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure' by demonstrating he had an expectation of privacy in the area illegally searched." *Id.* at 528, 765 S.E.2d at 569 (quoting *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)).

"A legitimate expectation of privacy is both subjective and objective in nature: the defendant must show (1) he had a subjective expectation of not being discovered, and (2) the expectation is one that society recognizes as reasonable." *State v. Brown*, 423 S.C. 519, 526, 815 S.E.2d 761, 765 (2018) (quoting *State v. Missouri*, 361 S.C. 107, 112, 603 S.E.2d 594, 596 (2004)). "[This] test, articulated in *Katz v. United States*, 389 U.S. 347 (1967), holds that government conduct is a search if it interferes with a reasonable expectation of privacy." Richard Seamon, *New Technology Brings Up Old Question: The Fourth Amendment and the Issue of Search*, 13 S.C. Law. 23, 25 (2001). "*Katz* posits a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *Moore*, 429 S.C. at 486, 839 S.E.2d at 893 (Beatty, C.J., dissenting) (quoting *California v. Ciraolo*, 476 U.S. 207, 211 (1986)).

In addition to the protection provided by the Unites States Constitution, the South Carolina Constitution provides the following: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and unreasonable invasions of privacy shall not be violated . . . ." S.C. Const. art. 1, § 10. "By articulating a specific prohibition against 'unreasonable invasions of privacy,' the people of South Carolina have indicated that searches and seizures that do not offend the federal Constitution may still offend the South Carolina Constitution." *State v. Weaver*, 374 S.C. 313, 322, 649 S.E.2d 479, 483 (2007).

In considering Eberhart's motion to suppress the GPS data, the trial court found that he did not have a legitimate expectation of privacy because he voluntarily submitted to GPS monitoring. The court found that Eberhart "entered into the agreement with the bond[] company, knowing that the bond[] company could share the information with law enforcement."

We find Eberhart had a subjective expectation in the privacy of his GPS data. He argues he was on bond for an unrelated charge, the GPS monitor was supplied by a private bond company for purposes of ensuring he appeared for that charge, there is no evidence in the record that the monitor was required as a condition of bond by a court, and the State failed to present any evidence that he was informed the government could have access to the data for investigatory purposes unrelated to his bond. *See Moore*, 429 S.C. at 486, 839 S.E.2d at 893 (Beatty, C.J., dissenting) (describing the first part of the two-part inquiry to determine a reasonable expectation of privacy as whether the individual had a subjective expectation of privacy in the object of the challenged search).

Having found Eberhart had a subjective expectation of privacy in his GPS data, the harder issue is whether Eberhart's expectation was reasonable.[1] In determining if an individual has a reasonable expectation of privacy, the Supreme Court of the United States "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v.*

[1] We acknowledge Eberhart's argument that the trial court erred in shifting the burden of proof from the State to prove an exception to a warrantless search. *See Robinson*, 410 S.C. at 530, 765 S.E.2d at 570 ("Each party has the burden to prove separate things during the motion to suppress. The State bears the burden to demonstrate that it was entitled to conduct the search or seizure under an exception to the Fourth Amendment's warrant requirement. . . . [T]he criminal defendant . . . bears the burden to demonstrate that he had an actual and reasonable expectation of privacy in the place illegally searched." (internal citations omitted)); *State v. Wright*, 391 S.C. 436, 442, 706 S.E.2d 324, 327 (2011) ("Warrantless searches and seizures are unreasonable absent a recognized exception to the warrant requirement."); *State v. Brown*, 401 S.C. 82, 89, 736 S.E.2d 263, 266 (2012) ("These exceptions include the following: . . . (5) the plain view doctrine, (6) consent, and (7) abandonment."). We also understand the State's argument that it does not have a burden of proving an exception until after a defendant shows a reasonable expectation of privacy. *See State v. Flowers*, 360 S.C. 1, 5, 598 S.E.2d 725, 728 (Ct. App. 2004) ("When a defendant has a reasonable expectation of privacy in the property being searched, Fourth Amendment rights apply to the search."). Here, the trial court analyzed both the exception of consent with the finding of a reasonable expectation of privacy, which is necessary when determining whether Eberhart's consent to the bond company equated to consent to a governmental search. We find the trial court did not erroneously shift the burden.

*Maryland*, 442 U.S. 735, 743–44 (1979).  The Fourth Amendment prohibition against a warrantless entry does not apply "to situations in which voluntary consent has been obtained, either from the individual whose property is searched . . . or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (internal citation omitted).  Also, an individual does not possess an actual, constitutionally protected expectation of privacy in something the individual "knowingly exposes to the public." *Katz*, 389 U.S. at 351.  *See State v. Herring*, 387 S.C. 201, 209 n.4, 692 S.E.2d 490, 494 n.4 (2009) (applying the plain view doctrine and stating "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection"); *see also Rawlings v. Kentucky*, 448 U.S. 98, 104–05 (1980) (a legitimate expectation of privacy is necessary to trigger Fourth Amendment protections).[2]

Here, the bail agreement with the bond company is not in the record; thus, there is no evidence that Eberhart consented to giving anyone other than the bond company access to his GPS data.  There is also no evidence that the bond company had authority to give consent on his behalf.  We accordingly find Eberhart did not knowingly expose the GPS information to the public by contracting with the bond company and because the agreement with the bond company is not in the record, we cannot say the bond company was a third-party with authority to share his data.  Thus, Eberhart was protected under the Fourth Amendment.

---

[2] We note a concern that many courts are struggling with in determining how far this third-party doctrine exception to the warrant requirement extends.  *See* Nicole Mo, *If Wheels Could Talk: Fourth Amendment Protections Against Police Access to Automobile Data*, 98 N.Y.U. L. Rev. 2232, 2234 (2023) (explaining that automobiles collect data on car owners via services such as OnStar, which is retained in the automobiles and accessible to third parties, who can share it with police).  "Courts are divided on whether the third-party doctrine applies to law enforcement's indirect access to auto data." *Id.* at 2257.  As we stressed above, "get a warrant."  "[A] warrant requirement for auto data access will do real work in ensuring that cartapping is one [less] shortcut that police can take to access some of our most personal information." *Id.* at 2272.

We find support for our analysis in the recent United States Supreme Court and South Carolina Supreme Court cases that more stringently view electronic surveillance vis-à-vis the right to privacy.  For instance, "[i]n *Carpenter v. United States*, the United States Supreme Court found 'an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [cell site location information (CSLI)]."  *State v. Carter*, 438 S.C. 463, 470–71, 884 S.E.2d 195, 199 (Ct. App. 2022), *aff'd*, 445 S.C. 157, 912 S.E.2d 264 (2025) (quoting *Carpenter*, 585 U.S. 296, 310 (2018)).  South Carolina has also recognized that the "police must get a warrant when collecting CSLI to assist in the mine-run criminal investigation" absent an exception such as exigent circumstances.  *Id.* at 471, 884 S.E.2d at 199 (quoting *Carpenter*, 585 U.S. at 320).  Although our supreme court affirmed *Carter* based on the emergency provision of the "federal Stored Communications Act[, which] specifically allows cell-service providers to release customer records" in an "emergency involving danger of death or serious physical injury to any person[,]" we find the general rule in South Carolina governing CSLI requires law enforcement to obtain a warrant absent certain exceptions not at issue in this case.  *Carter*, 445 S.C. at 163, 912 S.E.2d at 268 (quoting 18 U.S.C. § 2702(c)(4)); *see id.* at 162, 912 S.E.2d at 267 ("Ordinarily, we would begin our analysis of a question of this type by considering whether a search occurred, and if we found it did, we would then consider whether an exception to the warrant requirement applied.").

Thus, as Eberhart argues, there is a need to carefully examine whether people have a reasonable expectation of privacy in their digital data.

> [T]he oft-divided Supreme Court [of the United States] has taken unanimous stands against warrantless electronic surveillance and cell phone searches of arrestees . . . .  The Court has likewise recognized that the concept of a "reasonable expectation of privacy" for Fourth Amendment purposes must reflect the "seismic shifts in digital technology" that now allow for "near perfect surveillance" of digital records that "hold for many Americans the "privacies of life."  These efforts reflect a bipartisan consensus that, when it comes to government surveillance of private citizens, "digital is different."

Kate Weisburd, *Sentenced to Surveillance: Fourth Amendment Limits on Electronic Monitoring*, 98 N.C. L. Rev. 717, 720–21 (2020) (internal footnotes and citations omitted).

After consideration of the lack of proof of Eberhart's consent to share his GPS data with the government and the heightened considerations surrounding electronic surveillance—in addition to our mindfulness of our de novo standard of review regarding whether Eberhart had a reasonable expectation of privacy—we find the trial court erred in finding that he "entered into the agreement with the bond company, knowing that the bond[] company could share the information with law enforcement" and erred in finding Eberhart had no reasonable expectation of privacy in his data. *See Frasier*, 437 S.C. at 633–34, 879 S.E.2d at 766 (stating the ultimate legal conclusion regarding the reasonable expectation of privacy is a question of law subject to de novo review).

We find no exceptions to the requirement of a warrant in this case, and absent evidence of an agreement permitting BadBoyz to share Eberhart's data or court-ordered monitoring, we also find Eberhart had a reasonable expectation of privacy in the data and the circuit court erred in admitting it. However, we find the circuit court's error was harmless. *See State v. Rivera*, 402 S.C. 225, 246, 741 S.E.2d 694, 705 (2013) ("Most trial errors, even those which violate a defendant's constitutional rights, are subject to harmless-error analysis."); *State v. Warner*, 436 S.C. 395, 409, 872 S.E.2d 638, 644 (2022) (Hearn, J., dissenting) (applying a harmless error analysis to a Fourth Amendment violation). Here, Victim identified Eberhart in court as the perpetrator and video from the bank showed the moped's tag number. The moped had been reported stolen, yet was found at the owner's home where Eberhart was also found. After Victim could not identify Eberhart from the photo lineup, Investigator Gilliam compared the bank video to Eberhart and concluded it was the same person; Gilliam then interviewed and arrested Eberhart—finding Victim's debit card in the process.[3] Because we find the trial court's error in admitting the GPS data was harmless, we affirm on this issue. *See*

---

[3] Gilliam testified he spoke to BadBoyz to obtain GPS data on Eberhart before arresting Eberhart. To the extent the evidence would be inadmissible under the exclusionary rule, we find it would have been discovered by lawful means based on the evidence leading to Eberhart derived from the bank video and moped tag. *See State v. Hardin*, 425 S.C. 1, 18, 819 S.E.2d 177, 186 (Ct. App. 2018) ("The exclusionary rule is a deterrent sanction by which the prosecution is barred from introducing evidence obtained in violation of the Fourth Amendment.").

*State v. Collins*, 409 S.C. 524, 537, 763 S.E.2d 22, 29 (2014) ("The harmless error rule generally provides that an error is harmless beyond a reasonable doubt if it did not contribute to the verdict obtained."); *State v. Mitchell*, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985) ("Error is harmless when it 'could not reasonably have affected the result of the trial.'" (quoting *State v. Key*, 256 S.C. 90, 93, 180 S.E.2d 888, 890 (1971))).

## B.     VIDEO RECORDING

Eberhart argues the trial court erred in admitting the body camera recording of the initial police interview with Victim, raising a violation of Eberhart's rights under the Confrontation Clause and a hearsay violation.  We disagree.

"The appellate court reviews a trial [court's] ruling on admissibility of evidence pursuant to an abuse of discretion standard and gives great deference to the trial court."  *State v. Torres*, 390 S.C. 618, 625, 703 S.E.2d 226, 230 (2010).  "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law."  *State v. Cross*, 427 S.C. 465, 473, 832 S.E.2d 281, 285 (2019) (quoting *State v. Douglas*, 369 S.C. 424, 429–30, 632 S.E.2d 845, 848 (2006)).

*Confrontation Clause*

"The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . .'"  *State v. Henson*, 407 S.C. 154, 161, 754 S.E.2d 508, 512 (2014) (quoting U.S. Const. amend. VI) (alteration and omissions in original).  The constitutional right provided by the Confrontation Clause "applies to the states through the Fourteenth Amendment [and] guarantees a defendant in a criminal trial the right to cross-examine the witnesses against him."  *Id.*  "[I]t is the *opportunity* to cross-examine that is constitutionally protected."  *State v. Stokes*, 381 S.C. 390, 402, 673 S.E.2d 434, 440 (2009) (emphasis in original); *see id.* at 401, 673 S.E.2d at 439 (concluding there was no Confrontation Clause violation where the witness was available at trial and subject to cross-examination).

Here, the trial court determined the Victim was available to testify before ruling the video was admissible and did not allow the State to publish the video to the jury until Victim testified.  We find no Confrontation Clause violation.

*Hearsay*

The trial court found Victim's statements recorded on the video produced by Officer Selph's body camera were admissible as either present sense impressions or excited utterances, two exceptions to the rule against the admission of hearsay. We find no error.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. "Hearsay is not admissible unless there is an applicable exception." *State v. Brockmeyer*, 406 S.C. 324, 351, 751 S.E.2d 645, 659 (2013) (quoting *In re Care & Treatment of Harvey*, 355 S.C. 53, 61–62, 584 S.E.2d 893, 897 (2003)). Present sense impressions and excited utterances are exceptions to hearsay. Rule 803, SCRE. A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Rule 803(1), SCRE. "To qualify as a present sense impression: '(1) the statement must describe or explain an event or condition; (2) the statement must be contemporaneous with the event; and (3) the declarant must have personally perceived the event.'" *State v. Prather*, 429 S.C. 583, 611, 840 S.E.2d 551, 565 (2020) (quoting *State v. Hendricks*, 408 S.C. 525, 533, 759 S.E.2d 434, 438 (Ct. App. 2014)). "For a statement to be an excited utterance: '(1) the statement must relate to a startling event or condition; (2) the statement must have been made while the declarant was under the stress of excitement; and (3) the stress of excitement must be caused by the startling event or condition.'" *Id.* at 611, 840 S.E.2d at 565–66 (quoting *State v. Washington*, 379 S.C. 120, 124, 665 S.E.2d 602, 604 (2008)).

Here, Victim's statements on the video recording described the robbery, were made within thirty minutes of the event, and were perceived by Victim. We find the statements were present sense impressions and met the exception to the rule prohibiting the admission of hearsay. The statements also met the requirements of an excited utterance. They were made after a double armed robbery at gunpoint, which is a startling event; made within thirty minutes of the robbery, which is well within the time generally accepted as considering a victim as still under the stress of the robberies; and that stress was caused by the robbery. Accordingly, we find no error by the trial court in admitting the statements as exceptions to the rule against the admission of hearsay.

We find neither a violation of Eberhart's rights under the Confrontation Clause nor a hearsay violation in the admission of the body camera recording of the initial

police interview with Victim.  *See State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006) ("The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion.").

**CONCLUSION**

Based on the foregoing, Eberhart's convictions and sentences are

**AFFIRMED.**

**TURNER, J., concurs.**

**MCDONALD, J., concurring in result only:**

While I respectfully concur in the result reached by my colleagues in the majority, I write separately because I agree with the circuit court that a criminal defendant has no "legitimate expectation of privacy when he voluntarily submits to GPS monitoring" while out on bond.

In addition to the circuit court's cogent ruling, I find persuasive the analysis of the Colorado Court of Appeals in *People v. Campbell*, 425 P.3d 1163, 1170 (Colo. App. 2018).  In this appeal from his convictions for second-degree burglary and criminal mischief, Campbell challenged the trial court's denial of his motion to suppress GPS location data obtained through the ankle monitor he wore at the request of a private bondsman.  *Id.* at 1168.  Rejecting Campbell's claims under both the Fourth Amendment and the more protective provision of Colorado's Constitution, the Colorado court explained:

> Under the Supreme Court precedent, Campbell had no reasonable expectation of privacy in the GPS data because he voluntarily disclosed such data to a third party—his bondsman.  Campbell was aware that his bondsman had access to the GPS location data to ensure that he did not leave the state while out on bond. In short, Campbell "t[ook] the risk, in revealing his affairs to another, that the information w[ould] be conveyed by that person to the Government."  Thus, even if we assume he subjectively believed his GPS data would remain private, that expectation was not one society would be prepared

to call reasonable.

*Campbell*, 425 P.3d at 1170 (alteration in original) (quoting *United States v. Miller*, 425 U.S. 435, 443 (1976)).

In my view, when a defendant submits to an ankle monitor as a condition of his bond—whether the condition is imposed by a court or by a private bondsman—he has neither a subjective expectation of privacy in the monitoring data nor an expectation of privacy that society would deem reasonable. Under bond conditions like those imposed here, this location data differs from that obtained when the Government surreptitiously installs a GPS device on a vehicle or obtains cell site location data without a warrant.

Here, the circuit court properly recognized that one "of the conditions of bond is good behavior" and "the purpose of the GPS is to be able to locate the Defendant." The circuit court further found the defendant knew the location data "could be shared with law enforcement, and it could be shared with the Court." Finally, section 17-15-20(A) of the South Carolina Code (2014) provides:

> An appearance recognizance or appearance bond must be conditioned on the person charged personally appearing before the court specified to answer the charge or indictment and to do and receive what is enjoined by the court, and not to leave the State, and be of good behavior toward all the citizens of the State, or especially toward a person or persons specified by the court.

For these reasons, I would find the circuit court correctly determined Eberhart had no reasonable expectation of privacy in the ankle monitor data and properly declined to suppress the GPS location information obtained from his bond company.